## STATE ex BORIS v INDUSTRIAL COMM

Ohio Appeals, 2nd Dist, Franklin Co

No 2869. Decided Oct 26, 1938

Wardlaw, Gertner & Armstrong, Columbus, for relator.

Herbert S. Duffy, Attorney General, Columbus, Eugene Carlin, Asst. Atty. Gen'l, Columbus, for respondent.

### OPINION

By BARNES, PJ.

The above entitled cause is now being determined as an original action in this court. The relator seeks a writ of mandamus requiring the defendant to fix his average weekly wage at $25.51, and that compensation previously paid out and claimed erroneous be corrected and readjusted. The issues are joined on relator's petition and respondent's answer.

The answer in addition to a denial of the actionable averments presents the defense of laches. The cause is submitted on the pleadings and an agreed statement of facts.

On or before October 25, 1921, relator, John Boris, was a regular employee of the National Coal Company, an Ohio organization.

Prior to October 28, 1921, the National Coal Company had elected and qualified to pay compensation direct to its employees for any injuries received in the course of and arising out of their employment, and

fully qualified as a self-insurer.

On October 28, 1921, the relator, John Boris, sustained injuries in the course of and arising out of his employment, and on February 1, 1922, he filed an application with the Industrial Commission for a determination of his right to compensation.

The commission made an award in favor of the relator and the employer continuously paid the various awards of compensation until January 27, 1926.

On said date, January 27, 1926, relator was declared permanently and totally disabled, and compensation was ordered paid accordingly.

The commission found relator's average weekly wage to be $16.81, and ordered compensation paid on that basis. Copy of the wage statement, identified as Exhibit A, was on file with the Industrial Commission of Ohio on and after June 20, 1922. The average weekly wage was determined on the average wage received over a period of 20 2/7 weeks immediately preceding the accident. The compensation directed to be paid was $11.21 per week.

The National Coal Company on or about May 26, 1926, became insolvent and since that date the surety company executing the bond for the National Coal Company had been required to assume payment of compensation awarded and has duly made such payments to date of trial.

. On May 21, 1937, the employee, John Boris, filed with the Commission his application to modify previous award. The reasons assigned for modification of award are as follows:

"That he is entitled to the higher rate of compensation inasmuch as compensation now being paid is on an erroneous average weekly wage. That the average weekly wage should be reviewed and compensation adjusted accordingly. That he should be paid a maximum of $15.00 per week compensation."

. Between January 19, 1927, and May 21, 1937, no application for modification of award was filed by relator, John Boris. However, on July 9, 1930, Andrew R. Posluszny, an attorney at law of Detroit, Michigan, addressed a letter to the Industrial Commission, at Columbus, Ohio, stating in substance that Mr. John Boris had requested their office to inquire as to the amount of compensation due him weekly. The letter also contained recital as to the contention that Mr. Boris had originally received $15.00 per week and later this was reduced to $11.21.

On July 18, 1930, the commission answered the attorney's letter, in effect stating that compensation had been paid in the sum of $15.00 per week, and further that the claim was at a later date presented to the commission on the question of the rate of compensation due claimant on a permanent total basis, at which time the commission found the claimant only to be entitled to the rate of $11.21 per week. The letter further stated that the commission ordered that no adjustment be made on the compensation previously paid.

On the 15th day of July, 1937, the Industrial Commission heard and considered relator's application to modify previous award, as filed May 21, 1937, and on said date, to-wit, July 15, 1937, made the following order and finding:

"This day this cause came on for further consideration of the commission. After consideration, it is ordered that claimant's application for modification of award filed May 21, 1937, be dismissed for the reason that on January 18, 1927, when claimant was declared to be permanently and totally disabled, the commission inquired into and fixed the average weekly wage at $16.81 under the rules in force at said time and compensation has been paid upon such basis since that date; that no further application was filed for over ten years from the date of last order."

The questions to be determined may be narrowed down to the following:

1. Was the Industrial Commission guilty of an abuse of discretion in determining the average weekly wage on the basis of average wages received over a period of 20 2/7 weeks, or should the computation have been made on the basis of a lesser period of time not less than two nor more than ten weeks?

2. If the record presents an abuse of discretion as to the number of weeks used for the basis of computation, should the writ of mandamus be denied on the ground of acquiescence or laches?

We will not discuss the questions in the above order:

Sec 1465-84, GC, reads as follows:

"Sec 1465-84 GC. Basis upon which to compute benefits. The average weekly wage of the injured person at the time of the injury·shall be taken as a basis upon which to compute benefits."

For a number of years the Industrial Commission was operating under a pro-

mulgated rule by which the basis for computing benefits was the weekly wage at time of injury. This rule was in direct' conflict with the provisions of the Code which require average weekly wage. The commission repudiated this rule without formally repealing or amending it, and the Supreme Court, in the case of **State ex Kildow v Industrial Commission, 128 Oh St 573**, held they had a' right so to do.· The 7th syllabus reads as follows:

"7.. The Industrial Commission, being a state agency, is not estopped to plead the invalidity of rules adopted and promulgated by it."

Also syllabus 3:
"3. The Industrial Commission can not, in the exercise of its rule-making power, enter a field that the General Assembly has preempted by legislative enactment."

Syllabus 4:
"4. Sec 1465-84, GC, enacted in its present form in 1913, provides that the average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits, and such section renders nugatory the rule adopted and promulgated by the Industrial Commission on October 9, 1923, which rule in effect provides that the basis of compensation of an injured claimant should be the full weekly wage at the time of injury."

· Syllabus 5 is also in point and reads as follows:
"5. Sec 1465-84, GC, is a mandatory statute and it does not invest the Industrial Commission with a discretion to apply its own rule in determining the average weekly wage of a claimant at time of injury."

Syllabus 6 reads as follows:

"6. The words 'at the time of the injury' as used in that section mean that the Industrial Commission, in arriving at a basis for compensation, shall consider the shortest possible time immediately prior to the injury as will enable it to intelligently determine an 'average weekly wage * * *'·at the time of the injury."

It will be noted that the words 'average weekly wage' are further qualified in the above section, §1465-84, GC, by the words 'at the time of the injury'. This language ·was first construed by the Supreme Court in this same Kildow case cited above.

Kildow was injured in the course of his employment . on December 26, 1930, and after presentation of claim and hearing, the Industrial Commission determined that he· was entitled to benefits; fixed his weekly wage at time of injury at $22.50, and thereafter paid Kildow a maximum allowance of $15.00 per week for temporary total disability from January 2, 1931, to September 18, 1932, and for temporary partial disability from September 19, 1932, to October 30, 1932. The total amount paid up to and including October 30, 1932, was the sum of $1427.14.

On December 29, 1932, Kildow's employer filed a wage statement with the Industrial Commission covering a period of six months prior to Kildow's injury, in other words, from July 1, 1930, to December 26, 1930, which wage statement showed Kildow's earnings for such period to be $301.10, or an average weekly wage for the above period of $11.71.

On January 21, 1933 the Industrial Commission made an order that all compensation which had been paid Kildow· to October 30, 1932, be adjusted on a wage of $11.71 per week, and that he be paid compensation for temporary total disability from January 2, 1931, to September 18, 1932, at the rate of $7.81 per week; and compensation for temporary partial disability from September 19, 1932, to October 30, 1932, at the rate of $7.81 per week; and further compensation for temporary total disability from December 29, 1932, to February 1, 1933, at the rate of $7.81 per week, all of which compensation under said adjustment amounted to $778.78, which, deducted from the compensation previously paid over the same period at the rate of $15.00 per week, created an over payment in the amount of $648.37; and since this adjustment the Industrial Commission awarded Kildow further compensation for temporary total disability up to and including July 16, 1933, at the rate ·of $7.81 per week, in the sum of $188.37, which award was applied on the over payment, thereby reducing it to $460.93. On July 11, 1933, Kildow filed an application for modification of award,. claiming that his full weekly wage at the time of his injury was $24.08, and he asked for readjustment of compensation on that basis, in accordance with the promulgated rules of the Industrial Commission.

On October 9, 1933, this application was considered by. ·the Industrial Commission and an order was' made in substance that the order of January 31, 1933, be approved

and confirmed and further allowance be made on the same basis and that the same be credited to the overpayment thereafter made to Kildow.

It was the claim of Kildow that he was entitled to have all compensation that had been paid to him to the date of the filing of his petition herein, readjusted on the basis of his full weekly wage at the time of · injury, which he claims was $24.08, and all in accordance with the rules previously adopted and promulgated by the Industrial Commission. He filed his original action in mandamus in the Supreme Court and prayed that a writ issue directing the Industrial Commission to readjust on the basis of his full weekly wage.

The Supreme Court declined to grant to plaintiff the relief as prayed for, for the reason that the provisions of the Code and not the rules of the commission which fixed the weekly wage as the basis, was controlling. In other words §1465-84 GC provided for the basis of average weekly wage, and hence the weekly wage at the time of accident might not be the average. In order to obtain an average it will be necessary to consider at least two. The Supreme Court did not attempt to fix an arbitrary time to be controlling in all cases. It determined that by reason of the words 'at the time of the injury', the Industrial Commission should consider the shortest possible time immediately prior to the injury as would enable it to intelligently determine the average weekly wage. By the rule thus promulgated . the commission is invested with a sound discretion which will not be disturbed except for gross abuse of such discretion.

The Supreme Court in its determination considered the question as to whether or not the commission going back six months as ·a basis for determining average weekly wage abused its discretion. The court held that there was an abuse of ·discretion, and also held that four weeks was the shortest practical time within which an average weekly wage could be ascertained. The writ was allowed and the Industrial Commission ordered to readjust Kildow's compensation on the basis of $61.68 received in the four weeks immediately preceding his injury, which divided by four would give his average weekly wage ·$15.42.

· The instant case has many points in common with the reported case, except in the Kildow case the claimant acted promptly, whereas in the instant case more than ten years elapsed between the determination· by the commission of the average weekly wage and the proceedings for readjustment. The Kildow case was decided November 14, 1934.

In 1936, the Supreme Court again had before it a similar question involving the construction of §1465-84, GC. This is the case of **State ex Brownell v Industrial Commission of Ohio, 131 Oh St 124.** In this case the Industrial Commission had used the period of ten weeks immediately preceding the fatal accident and allowed compensation on the average weekly wage thus ascertained. Relator complained that ten weeks did not correctly reflect his average weekly wage, and prayed that by reason of the seasonable character of the service in which decedent was engaged, that the entire year preceding the injury should have been the period entering into the calculation to determine the average weekly wage. The writ was denied. The case of State ex Kildow v Industrial Commission, supra, was referred to and approved. In the second syllabus appears the following:

"In the absence of a gross abuse of discretion such finding is final."

It is very doubtful if the Supreme Court in this case even inferentially adopts the period of ten weeks as the proper basis for determining decedent's average weekly wage. This is due to the fact that the manner in which the question arises challenged the action of the commission in not considering a longer period of time and no question was presented that they should have considered a shorter period of time. In the last case cited, Judge ·Day, in a very strong dissenting opinion, reasons that by reason of the seasonal nature of decedent's business a period of one year preceding decedent's injury was the shortest possible time to intelligently arrive at decedent's average weekly wage. The dissent certainly does present a very strong reason why · the section of the Code should be immediately amended.

In the two cases above cited and quoted from, we have two diametrically opposed· situations, the result of which possibly worked an injustice to the commission in one case. and to the claimant in the other. In seasonable occupations if the employee happens to be injured during the dull season, his compensation is very small, whereas if such injury happens in the busy season, his compensation would be out of line. However, it is not the province of the court to legislate, but merely to administer the law in . accordance with the legislative enactments.·

But for relator's delay in bringing his action. we would feel bound to follow the Kildow case and determine that the commission abused its discretion in adopting 20 2/7 weeks as the basis for determining his average weekly wage. In the Kildow case the commission adopted 26 weeks, and the Supreme Court held that 4 weeks would be the proper basis.

We now consider the question as to whether or not the writ should be denied on the ground of acquiescence or laches.

The Supreme Court considered this phase of the question in the case of State ex Amburns v Industrial Commission of Ohio, 130 Oh St 152. According to the statement in the above entitled case, it appears that the relatrix was the wife of William Amburns, who died July 19, 1922, as a result of an accidental injury sustained while in the course of his employment with the Wellston Iron Furnace Company, which company had complied with the Workmen's Compensation Law of the state. On presentation of claim and hearing, the commission found that relatrix was entitled to participate in the fund. As the basis for determining the average weekly wage, the commission used as the basis the earnings for the entire year, and thereby found an average of $15.00 per week. On this basis claimant was entitled to 66 2/3% or $10.00 per week. The allowance in the aggregate was $4060.00, and the last payment was made in June, 1930. It appears that the average weekly wage of the decedent, if limited to a few weeks prior to his injury. would have been much higher and thereby the amount of compensation allowed to relatrix would have been greater. The prayer of the petition asks that a writ of mandamus be issued to compel the commission to fix and pay the relatrix the additional compensation based upon an average. weekly wage of $19.19. The answer admitted many of the allegations of the petition, and then averred that the date of the award was June 26, 1922, of which claimant was duly notified; the last installment of compensation paid June 26, 1930; that no exception was taken to any action of the commission until January 16, 1935, more than twelve years after the award was made and more than four and a half years after it had been completely paid. The answer contained the further averment that after the award was made, the commission set up the proper reserve against the insurance fund and charged the same against the industry and employers engaged in. that classification; that thereafter the pre-

miums had been established and collected upon such basis; that the allowance of the additional claim now existing would materially affect the state insurance fund, in that any additional award necessarily would be added to the premiums of employers engaged in such business at this time, regardless of whether they were so engaged in 1922.

The above affirmative averments were set out in the second defense, to which relatrix filed a demurrer. In deciding the case the court, among other things, said the following:

"The issuance of the extraordinary writ of mandamus rests in the sound discretion of the court. The application therefore must be timely and the right of the relatrix to the relief must be clear. Where an unreasonable time has elapsed, and particularly when the allowance after such delay would be prejudicial to the right of the defendant, it will be refused. * * * The demurrer to the second defense of the answer is therefore overruled. It having been conceded that disposition of this demurrer is decisive of the case, the writ is denied and the petition is dismissed."

The above reported case is to be distinguished from the instant case in that, in the reported case full payment had been made and some four and a half years had elapsed thereafter, whereas in the instant case the payments are still being made.

In the reported case twelve and a half years had elapsed since relatrix's action accrued, whereas in the instant case a little over ten years has elapsed since the action accrued. The difference between 12 1/2 years and 10 years is not sufficient to distinguish the two cases. If the lapse of 12 1/2 years would lose the right through laches, we would likewise determine that the lapse of ten years would have the same effect.

It is urged that the Supreme Court's decision in the reported case was predicated upon the fact that 4 1/2 years had elapsed after the last payment. After a careful reading of the opinion, we are not in accord with that conclusion. It is provided in the Code that the lapse of ten years from the date of last payment bars further proceedings. We doubt if the Supreme Court intended to give major importance to the fact that 4 1/2 years only had elapsed since the date of the last payment.

As we construe the decision, it is deter-

minative of the instant case and demands a denial of the writ.

Counsel for relator raise the question that the instant case should be distinguished from that of State ex Amburns v Industrial Commission of Ohio, 130 Oh St 152, for the claimed reason that some of the grounds upon which the Supreme Court based its judgment of laches are not present in our case. These distinguishing facts as pointed out are that in the case at bar the employer was a self-insurer, and hence the amount of the award would not affect the fund under the control of the Industrial Commission. We do not think the law should make this distinction.

A question remains in our minds as to whether or not in a proper case, where payments are continuing at time of hearing, we might order the commission to make a corrected determination of average weekly wage as the basis for weekly payments following the filing of application for modification of award. In many instances the commission fixes the total amount to be paid and then provides the weekly payments. When the sum of the weekly payments equals the total allowance, payments then stop. In the instant case we are not advised as to whether or not the commission fixed the total amount to be paid. If so, the only effect of the added weekly allowance would be to shorten the time within which the total would be paid. If counsel for claimant conclude that under the state of the record this question is involved, and desire to be heard, the question may be raised by application for rehearing.

HORNBECK and GEIGER, JJ, concur.